CHRISTOPHER S. FORD (CA Bar No. 337795)
MEGAN K. BANNIGAN (*pro hac vice* forthcoming)
NAOMI PERLA (*pro hac vice* forthcoming)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
Telephone:  (212) 909-6000
Facsimile:  (212) 909-6836
Email:  csford@debevoise.com
Email:  mkbannigan@debevoise.com
Email:  nperla@debevoise.com

*Attorneys for Plaintiffs*
*Edikted, LLC and Edikted Global Ltd*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## DIVISION OF SAN FRANCISCO

|  |  |
|---|---|
| EDIKTED, LLC and EDIKTED GLOBAL LTD, <br><br> Plaintiffs, <br><br> v. <br><br> ROSS STORES, INC., <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT *for*:** <br><br> 1) **REGISTERED TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114;** <br><br> 2) **UNFAIR COMPETITION, 15 U.S.C. § 1125(a)(1)(A);** <br><br> 3) **FALSE ADVERTISING, 15 U.S.C. § 1125(a)(1)(B);** <br><br> 4) **UNFAIR COMPETITION, Cal Bus. & Prof. Code § 17200; AND** <br><br> 5) **COMMON-LAW TRADEMARK INFRINGEMENT.** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs Edikted, LLC and Edikted Global Ltd (f/k/a TL-DCZ LTD) (collectively, "Edikted"), by and through their attorneys, Debevoise & Plimpton LLP, bring this action against Defendant Ross Stores, Inc. ("Defendant" or "Ross"), and in support thereof allege as follows:

**PRELIMINARY STATEMENT**

1.      Edikted is a hugely popular, innovative, and rapidly growing LA-based fashion company.  Since its founding in 2020, Edikted has experienced explosive growth, driven in large part by TikTok influencers and organic social media attention.  Searches for #Edikted on TikTok return hundreds of videos and millions of views, reflecting the brand's strong resonance with Gen Z consumers, its target consumer demographic.  Edikted has quickly garnered hundreds of millions of dollars in sales and millions of customers and social media followers.

2.      Edikted has invested heavily in promoting its brand identity, including its distinctive, instantly recognizable pink-and-blue logo design and stylized font:



3.      The Edikted brand stands out for its fast-paced approach to Gen Z fashion and its perfectly curated, Instagram-worthy shopping experience designed for a digital native generation.  Edikted's timely product launches and targeted marketing have enabled it to respond quickly to viral trends and shifting consumer preferences, helping drive the brand's rapid growth.  In addition to its online store, Edikted has opened numerous flagship retail locations across the United States—doubling its brick-and-mortar footprint between 2024 and 2025.

4.      Edikted's distinctive logo and visual identity have been central to its growth.  Edikted's eye-catching pink-and-blue logo and pink color scheme have been consistently reflected across its packaging—including on shopping bags, online order packaging and hangtags on every Edikted product to ensure consumers can easily identify Edikted's product—as well as in its marketing and retail presence, even at pop-up locations, as shown below:

1









5.      Edikted's physical retail locations are designed specifically for content creation and serve as real-world extensions of the brand's social media presence.  Edikted consumers are not merely

**COMPLAINT**

purchasing products; they are engaging in a curated brand experience.  From the moment shoppers walk through the bright pink, heart-shaped archway—often a perfect photo opportunity—to the moment they exit Edikted's stores, they are immersed in an environment tailored to the Gen Z shoppers Edikted targets, including features like bright pink furniture, mirrors for selfies across the store and a photo booth to capture the moment.  And Edikted's customers have responded incredibly positively to that experience:  at the grand opening of just one of Edikted's physical retail locations—its Fashion Valley location in San Diego—thousands of customers waited in a line that snaked around the building, starting a queue in the still-dark hours of the morning, just for the opportunity to engage with the Edikted brand.

 

6.      The Edikted brand has also been the subject of extensive unsolicited media coverage in widely read sources like Bloomberg, Cosmopolitan, E! News, Forbes, InStyle, WWD, Nylon, New York Magazine, Newsday, The Wall Street Journal, and Business of Fashion since its launch in 2020.

7.      Edikted has quickly become a celebrity favorite—garnering a following among celebrities such as Megan Fox, Hailey Bieber, Kristen Stewart, Charli D'Amelio, Ally Brooke, Alex Cooper, Jordan Alexander, and Tinx—as reported in the media.  Edikted has also released popular collaborations with internationally famous brands like Barbie, as shown below.

3

**COMPLAINT**



8.   Edikted owns common-law trademark rights in its distinctive, stylized bow logo (which, along with Edikted's wordmark and logo, are the "EDIKTED Marks").  Edikted's bow logo appears on various Edikted clothing pieces both with the Edikted logo and standing alone, identifying the items to consumers as originating from Edikted:

      

4

**COMPLAINT**

9. Unfortunately, Edikted's fame has also drawn unlawful and predatory behavior by another clothing company envious of Edikted's success. After Edikted's immense popularity and success, Defendant Ross, a discount retailer, waged a months-long campaign to try to get authentic Edikted products into its stores. For months, Ross representatives emailed Edikted multiple times, made unsolicited and unannounced visits to Edikted's offices, and refused to cease communications even after Edikted stated that it would not collaborate with Ross because doing so would be entirely inconsistent with—and even damaging to—the brand Edikted has worked so hard to build. After Edikted rebuffed those overtures, Ross began a campaign of infringement designed to confuse consumers into believing Ross carried authentic Edikted products that were actually knockoffs intentionally designed by Ross to copy Edikted's branding and designs.

10. Ross directly copied not only Edikted's distinctive pink-and-blue label design and distinctive font—it then placed those confusingly similar labels on *exact copies* of Edikted's well-known clothing designs, including Edikted's distinctive bow design.[1]

|  |  |
| :---: | :---: |
| <u>Authentic Edikted Hangtag</u> | <u>Ross' Infringing "Radikkal" Hangtag</u> |
|  |  |

11. The appearance of these confusingly similar labels on nearly identical designs was no accident. Upon information and belief, Ross employees directed overseas factories to design and manufacture products identical to Edikted's authentic designs using confusingly similar labels with

---

[1] Edikted is pursuing federal copyright registration for several of its designs and will amend its claims to include a copyright infringement claim if and when appropriate.

**COMPLAINT**

similar color schemes and fonts—including the Ross-created brands RADIKKAL, TELEPATÍA, and BLUE RIOT (collectively, the "Infringing Marks")—that blatantly copied Edikted's trademark branding and created extensive confusion when Ross sold them into the market.

12.    Examples of just some of Ross' uses of the Infringing Marks, alongside authentic Edikted products and trademarks, are shown below:

| Authentic Edikted Products | Ross Products Bearing Infringing Marks |
| --- | --- |
|  |  |
|  |  |

6

| Authentic Edikted Products (with Edikted's distinctive bow logo) | Ross Products Bearing Infringing Marks (using Edikted's distinctive bow logo) |
|---|---|
|  |   |

13. Ross' scheme to deceive consumers relied on more than just these infringing trademarks and copycat designs. Ross' website (https://www.rossstores.com/about-us/) intentionally leads consumers to believe that the products Ross carries are, in fact, authentic brand merchandise. Ross falsely advertises that its stores contain "a constant stream of high-quality department and specialty store brands at extraordinary savings (aka bargains)," falsely telling consumers that it sells authentic "brands" at a "bargain"—when in reality many of them are dupes or infringing knockoffs of the high-quality and famous brands Ross purports to sell. While Edikted recognizes that there is competition in the fashion industry, including the sale of similar designs at different price points, Ross' conduct is not fair or lawful competition: it is creating the false impression that consumers are purchasing authentic branded merchandise, including authentic Edikted products, further harming and diverting sales from retailers of authentic clothing like Edikted.

7

**COMPLAINT**

14. Defendant's brazen copying demonstrates a clear bad faith intent to capitalize on the goodwill associated with the EDIKTED Marks and Edikted's brand generally. This bad faith is further evidenced, upon information and belief, through Defendant's refusal to fully discontinue the manufacture, sale, promotion, and distribution of the Infringing Marks even after Edikted put Defendant on notice of its infringing and dilutive conduct.

15. Defendant's conduct harms consumers who are likely to be confused into believing that Defendant's Infringing Marks are somehow associated with Edikted. It also harms Edikted by co-opting its hard-earned goodwill and diminishing the source-identifying capacity of its valuable Edikted trademarks and brand. Unsurprisingly, social media is now rife with confused consumers who believe—and lead others to believe—that authentic Edikted products can be found in Ross' stores, exactly the outcome Edikted sought to avoid when it rejected Ross' overtures. Many of these confused consumers tag Ross' social media handles in their posts, putting Ross on notice of the extensive confusion its actions have created.

16. Although Edikted sought to avoid the need to file this Complaint by requesting that Ross permanently cease and desist from its unlawful conduct, Ross has refused to do so. Edikted brings this lawsuit to put a stop to Ross' trademark infringement and false advertising to protect consumers and to prevent Ross from continuing to capitalize on Edikted's hard-earned success and substantial investment in the widely recognized EDIKTED Marks.

## THE PARTIES

17. Plaintiff Edikted, LLC is a limited liability company organized under the laws of Delaware, with its principal place of business at 1327 Willow Street, Los Angeles, CA 90036.

18. Plaintiff Edikted Global Ltd, f/k/a TL-DCZ LTD, is a private limited company organized under the laws of Israel with its principal place of business at Abba Hillel Silver Rd 14, Ramat Gan, 5250607, Israel.

19. Upon information and belief, Defendant Ross Stores, Inc. is a corporation organized under the laws of Delaware, with its principal place of business at 5130 Hacienda Drive, Dublin, CA 94568.

**COMPLAINT**

**JURISDICTION AND VENUE**

20.    This Court has subject matter jurisdiction over Edikted's claims pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks).

21.    This Court has supplemental jurisdiction over Edikted's related state law claims under 28 U.S.C. § 1367.

22.    This Court has personal jurisdiction over Ross because it operates retail stores and maintains its headquarters and its principal place of business in the state of California, including in this District, at which, on information and belief, it offers for sale and sells products bearing the Infringing Marks at issue in this case.  In addition, on information and belief, Ross has further placed the Infringing Marks into the stream of commerce with the knowledge or understanding that such products are sold in the state of California, including in this District.

23.    As a result of this tortious conduct, Ross has caused, and is continuing to cause, injury to Edikted within this District.

24.    Venue is proper within this District under 28 U.S.C. § 1391 because Ross maintains its headquarters and its principal place of business in this District; on information and belief, a substantial part of the events or omissions giving rise to Edikted's claims occurred in this District.

**DIVISIONAL ASSIGNMENT**

25.    This action concerns intellectual property rights and is subject to district-wide assignment under General Order 44.  In addition, pursuant to Civil Local Rule 3-2(c)-(d) and Local Rule 3-5(b), assignment to the San Francisco Division of this District is proper because a substantial part of the events giving rise to the alleged claims herein occurred in San Francisco County. Specifically, Ross operates multiple retail stores in San Francisco County and, on information and belief, has offered for sale and/or sold products bearing the Infringing Marks through those retail locations.

**COMPLAINT**

## FACTUAL ALLEGATIONS

### *The Edikted Brand*

26.    Edikted is a Gen-Z-oriented fashion brand, heavily influenced by pop culture, technology, and current style trends.  Edikted was founded in 2020 with a goal to deliver the most coveted styles on the market, including top streetwear and runway trends, to Gen Z consumers.  Edikted's business model has enabled it to achieve that goal, driving exceptional success since the brand's founding.

27.    Edikted first started as an online-only clothing retailer, but has since grown and now operates 16 brick-and-mortar locations across the United States, with an additional location in Tennessee coming soon, including locations in San Diego and Los Angeles.  In just five years, Edikted has generated millions of dollars in revenue.

28.    Edikted's rapid growth has been driven in part by its ability to identify viral trends early, respond quickly with targeted product launches, and use a test-and-repeat model to determine which styles resonate with consumers and should remain in its product lineup.  Each of Edikted's clothing pieces reflects deliberate creative choices designed to reinforce Edikted's distinctive brand identity in the marketplace.

29.    Edikted has consistently used a distinctive brand logo that includes a stylized lowercase wordmark with rounded, slanted lettering; a star-shaped "i" dot; and a distinctive elongated "k."  The Edikted wordmark sometimes appears in black and white but is commonly paired with Edikted's unique color scheme of an eye-popping pink and white or pink and blue combination, as shown below:



30.    As noted above, Edikted's unique color scheme is used across its brand, advertising, physical retail locations, and other consumer-facing materials, effectively defining the brand's overall aesthetic.  In an article identifying "Teen and Tween Spots in New York City," Forbes listed Edikted

10

as one of the "can't-miss spot[s]" and observed that "carrying one of Edikted's iconic pink-and-blue shopping bags is basically a badge of honor."[2]  Social Life Magazine stated that the "brand's signature pink packaging [has become] as recognizable as the clothes inside."[3]  The Wall Street Journal reported that a 2025 survey from investment bank Piper Sandler placed Edikted "in the top five websites for upper-income teenage girls."[4]

31.    One of Edikted's popular designs includes a decorative bow, either alone (often in Edikted's well-recognized pink color scheme) or paired with the Edikted wordmark.  As a result of its extensive use, the bow design has become recognizable to consumers as an indicator of source—namely, that the products are Edikted designs.  Examples of the bow logo on authentic Edikted clothing pieces are shown below:

  

[2] Bea McMonagle, *From Soho To Sweets: Teen And Tween Spots In New York City,* Forbes (May 1, 2025), https://www.forbes.com/sites/beamcmonagle/2025/04/30/from-soho-to-sweets-nycs-best-teen-and-tween-spots/ (last visited June 21, 2026).

[3] Cass Almendral, *Edikted Hamptons: The TikTok Fashion Brand Quietly Dressing Southampton's Gen Z*, Social Life Magazine (Dec. 25, 2025), https://sociallifemagazine.com/the-archive/edikted-hamptons-tiktok-fashion/ (last visited June 21, 2026).

[4] Chavie Lieber, *How Edikted Built a Teen Sensation on Crop Tops and Miniskirts*, The Wall Street Journal (June 14, 2026), https://www.wsj.com/style/fashion/edikted-stores-sweatshirts-miniskirts-gen-z-82a05fbb (last visited June 21, 2026).

11

**COMPLAINT**

32.    Edikted has an active social media presence with channels that regularly post information to promote Edikted products and connect with nearly a million followers on Instagram and 1.1 million followers on TikTok. For example, within its first year alone, the #edikted hashtag had more than 183.6 million views on TikTok.

33.    Edikted also uses celebrities, influencers, and popular collabs to enhance its brand identity. For example, musician, actor and influencer Addison Rae, one of TikTok's most-followed creators with over 88 million followers, has worn and posted Edikted clothing, and Edikted has reposted Addison's posts reflecting her Edikted-branded clothing and calling attention to Addison in the caption by tagging Addison (@addisonrae) with #edikted, as shown below:





12

**COMPLAINT**

34. Edikted has also collaborated with internationally famous brands like Barbie, offering a product line titled "Barbie by Edikted" that reinforces Edikted's pink branding. Edikted promoted this collaboration through social media and pop-up events, as shown below:




35. The use of social media, as well as influencers who promote Edikted's products, has been a key strategy component of Edikted's success and ability to recognize trends and connect with consumers. That strategy has been highly successful. For example, in a "TikTok for Business" case study concerning Edikted's promotion of its "New Arrivals Campaign," TikTok reported that Edikted achieved a 111% increase in Gross Merchandise Value ("GMV"), a 98% increase in orders, more than one million visitors in five days, and held the No. 1 ranking in fashion GMV during the campaign

13

**COMPLAINT**

period.[5]  The media has also recognized Edikted's success, noting it as a "TikTok-viral brand" that is "popular among Gen-Z shoppers."[6]

36.    In 2022, Glossy dubbed Edikted "Gen Z's new favorite brand,"[7] while other outlets identified it as one of the top trending fashion brands among Gen Z consumers.[8]  The brand's momentum has continued in subsequent years, with media coverage still referring to Edikted as a "TikTok-famous fashion brand" in 2025[9] and the "Cool-Girl Brand" in 2026.[10]  During the 2025 holiday shopping season, Bloomberg highlighted how Edikted was one of a small handful of brands that was succeeding while legacy brands were struggling.[11]  Most recently, The Wall Street Journal reported on Edikted as an "aggressively pink clothing store" and a "Retail Sensation," quoting a

[5] *Edikted — Fashioning Success on TikTok Shop – A Blueprint for Growth,* TikTok for Business, https://ads.tiktok.com/business/en-US/inspiration/edikted-tiktok-shop (last visited June 21, 2026).

[6] Allison Smith, *TikTok-viral brand Edikted is doubling its retail footprint in 2025,* Glossy (April 9, 2025), https://www.glossy.co/fashion/tiktok-viral-brand-edikted-is-doubling-its-retail-footprint-in-2025/ (last visited June 21, 2026).

[7] Sara Spruch-Feiner, *Meet Edikted, Gen Z's new favorite brand*, Glossy (Jan. 6, 2022), https://www.glossy.co/fashion/meet-edikted-gen-zs-new-favorite-brand/ (last visited June 21, 2026).

[8] Aina Jankunas, *How Edikted Took Over TikTok And Instagram*, FIZZY MAG, https://fizzymag.com/articles/how-edikted-took-over-tiktok-and-instagram (last visited June 21, 2026).

[9] Allison Smith, *TikTok-viral brand Edikted is doubling its retail footprint in 2025,* Glossy (April 9, 2025), https://www.glossy.co/fashion/tiktok-viral-brand-edikted-is-doubling-its-retail-footprint-in-2025/ (last visited June 21, 2026).

[10] Kaitlin Clapinski, *I Can Confirm This Cool-Girl Brand Makes the Best Under-$100 Basics (and You Can Shop It at Nordstrom)*, InStyle (Feb. 24, 2026), https://www.instyle.com/edikted-nordstrom-try-on-11912528 (last visited June 21, 2026).

[11] Jaewon Kang, *Teen Brands Win Over Wary Black Friday Shoppers While Other Deals Disappoint*, Bloomberg (Nov. 28, 2025), https://www.bloomberg.com/news/articles/2025-11-28/walmart-target-kohl-s-offer-black-friday-deals-to-counter-consumer-gloom?embedded-checkout=true (last visited June 30, 2026).

14

**COMPLAINT**

purchasing consumer stating that "[t]he branding grabs the girls right in."[12]  A number of media outlets have also reported on top celebrities showcasing the Edikted brand such as Hailey Bieber, Charli D'Amelio, Megan Fox, Olivia Rodrigo, and Kristen Stewart, as shown below (depicted left to right).[13] Edikted's store opening events have drawn coverage from local, regional, and industry outlets across the country, including the Dallas News, The Palm Beach Post, Fox Minneapolis-St. Paul, PennLive.com, New York-based outlets such as The Knockturnal and Commercial Observer, a California student publication, The Pony Express, and industry outlets such as Modern Retail/Glossy.



[12] Chavie Lieber, *How Edikted Built a Teen Sensation on Crop Tops and Miniskirts*, The Wall Street Journal (June 14, 2026), https://www.wsj.com/style/fashion/edikted-stores-sweatshirts-miniskirts-gen-z-82a05fbb (last visited June 21, 2026).

[13] Marenah Dobin, *Megan Fox, Hailey Bieber, Olivia Rodrigo & More Stars Have Worn This Super Affordable Clothing Brand*, E NEWS (Mar. 21, 2022), https://www.eonline.com/news/1323919/edikted-clothing-celebrities-megan-fox-hailey-bieber-olivia-rodrigo (last visited June 21, 2026); Janelle, Okwodu, *Kristen Stewart's Latest Find? An Affordable, Sustainable Cardigan*, VOGUE (Jan. 11, 2022), https://www.vogue.com/article/kristen-stewart-affordable-sustainable-cardigan (last visited June 21, 2026); Katie Decker-Jacoby, *Hailey Bieber Wore This Micro Mini Skirt AGAIN & It's on Sale For $28 This Black Friday*, Yahoo! life (Nov. 22, 2022), https://www.yahoo.com/lifestyle/34-micro-mini-hailey-bieber-205434858.html (last visited June 21, 2026).

**COMPLAINT**

***Edikted's Trademark Rights***

37.     Edikted owns federal and common-law rights in multiple trademarks covering its wordmark, logo, and design elements.  The EDIKTED word mark is protected by U.S. Trademark Registration Nos. 6,384,873 and 7,620,607, which cover a range of fashion and lifestyle goods and services, including jewelry, watches, handbags, wallets, travel and sports bags, clothing, footwear, headwear, athletic apparel, related accessories, and wholesale, retail, and online store services featuring those goods.  These trademark registrations are attached hereto as Exhibits A and B.

38.     Stylized versions of the EDIKTED wordmark, shown below, are protected by U.S. Registration Nos. 6,384,872 and 7,620,611 for the same goods.  These trademark registrations are attached hereto as Exhibits C and D.  Edikted also owns common-law rights in the stylized pink-and-blue version of its logo that uses these registered marks.



39.     Edikted has also applied for U.S. trademark registrations covering its distinctive bow logo designs, as shown below, including Application Nos. 99/717,871, 99/706,946, and 99/717,868.

16

**COMPLAINT**

*Defendant's Bad Faith Copying of the Edikted Marks*

40.    Edikted has achieved success in the fashion industry by cultivating a distinctive and recognizable brand identity, including its eye-catching pink and pink-and-blue color palette and unique logos.  The brand has further strengthened its position through carefully developed strategies tailored to Gen Z consumers and the viral trends they consume.

41.    Rather than compete fairly, Ross instead adopted a strategy of blatant copying intended to free-ride on the goodwill of the EDIKTED Marks and the substantial investment Edikted has made in its brand.

42.    Ross operates brick-and-mortar stores under the "Ross Dress for Less" name.  On the "About Us" page of its website (https://www.rossstores.com/about-us/), Ross claims that it "bring[s] [] customers a constant stream of high-quality department and specialty store brands at extraordinary savings (aka bargains)."

## Welcome to Ross Dress for Less

Since 1982, our focus has been on bringing our customers a constant stream of high-quality department and specialty store brands at extraordinary savings (aka bargains) while providing an easy, fun and organized shopping experience.

43.    This claim is intentionally false.  Rather, Ross is offering its customers a "constant stream" of infringing knockoff versions of authentic Edikted products.  Those products do not represent a "bargain" or "extraordinary savings"—or any savings at all—because they are not authentic Edikted products being sold at a discount, but rather infringing knockoffs that Ross itself designed to imitate authentic Edikted clothing.

44.    Consumers' belief that they could find "bargains" on authentic Edikted products at Ross is created through Ross' false advertising that consumers can find "the best bargains on the latest trends in clothing," like the Google search result shown below:

17

**COMPLAINT**



Ross Dress For Less
https://www.rossstores.com

**Ross Dress For Less**

**Ross** Dress for Less offers the best bargains on the latest trends in clothing, shoes, home decor and more! Find your store today!

45. Ross' false advertising is so pervasive that it permeates generative AI search results, which reinforce Ross' false messaging to consumers that what they will find at Ross stores are "bargains" and "designer deals" rather than knockoff and infringing products.

Finding designer bargains galore

Shoppers are hitting the jackpot, discovering incredible designer deals and luxury finds for pennies at Ross.

Generative AI is experimental. Learn more








▶ 17:21

ROSS DRESS FOR LESS * NEW FINDS!! SHOES/CLOTHING/DECOR...

25.4K+ views · 3 days ago

PrettyNflawed · You...
Shopping & product review


▶ 40:43

ROSS DRESS FOR LESS * Girly No Budget Shopping Spree! One Cart = $500+...

1.8K+ views · 6 days ago

kristabrusso · YouT...
Luxury shopping & deals YouTuber

▶ 34:19

ROSS * After Memorial Sale Summer Luxury New Finds Shopping Spree No Budget!...

570+ views · 1 day ago

kristabrusso · YouT...
Luxury shopping & deals YouTuber

46. Ross was well aware of the value of having authentic Edikted merchandise in its stores. As a result, beginning in early 2024, Ross representatives began aggressively soliciting Edikted's business, including by emailing Edikted multiple times requesting to collaborate, and making unsolicited and unannounced visits to Edikted's offices and warehouses in the United States and dropping off gifts and pitch decks, even after Edikted made it clear that it was uninterested in collaborating with Ross at this time.

**COMPLAINT**

47.    After Edikted made clear that it had no interest in a partnership with Ross because of the damage such a partnership would do to Edikted and its brand, Ross responded by copying every aspect of Edikted's brand.  Ross directed its factory partners to create confusingly similar infringing versions of the EDIKTED Marks—including RADIKKAL, TELEPATÍA, and BLUE RIOT—and apply those Infringing Marks to imitations of dozens of highly recognizable Edikted clothing designs, including the distinct bow design.  Once this blatant copying became known to Edikted, Edikted immediately informed Ross that it was infringing the EDIKTED Marks and causing damage to Edikted's brand reputation.

48.    Ross' copying of the Edikted logo is most blatant in the RADIKKAL line, which Ross intentionally designed to copy not only Edikted's distinctive pink-and-blue color scheme, but also the distinctive and protected elements of the stylized Edikted wordmark, including the star-shaped "i" and lowercase "k" placed side-by-side midway through the wordmark:

 

49.    Ross' copying of the Edikted logo is also apparent in the infringing TELEPATÍA and BLUE RIOT clothing lines, which likewise utilize Edikted's distinctive pink-and-blue color scheme and apply those logos to Edikted's unique clothing designs to heighten confusion:

19

**COMPLAINT**




50.　　The products Ross designed and sold bearing the Infringing Marks are nearly identical to authentic Edikted products, including because they have labels with a similar pink and blue color scheme and Edikted's distinctive bow design, as shown in the examples provided below:

| Authentic Edikted Products | Ross Products Bearing Infringing Marks |
|---|---|
|  |  |

20

| Authentic Edikted Products | Ross Products Bearing Infringing Marks |
|---|---|
| |  |
|  |  |

21

| Authentic Edikted Products | Ross Products Bearing Infringing Marks |
|---|---|
| <br> | <br><br><br> |

22

51.    Ross did not simply design multiple confusingly similar logos, however.  It then placed its Infringing Marks on products that were replicas, or "dupes," of authentic Edikted designs, creating the false impression that these "dupes" are in fact authentic Edikted clothing.  While Edikted recognizes there is a space for fair competition in the clothing industry, Ross' behavior crosses the line from creating permissible dupes to bad-faith trademark infringement when Ross applied its infringing logos to these designs.  Given the unmistakable similarities between the RADIKKAL, TELEPATÍA, and BLUE RIOT product lines and Ross' pursuit of a partnership with Edikted, there can be no doubt that Ross intentionally and in bad faith copied the EDIKTED Marks and paired its Infringing Marks with near-exact copies of Edikted's products to mislead consumers in Ross stores.

52.    Demonstrating its bad faith attempt to confuse consumers and siphon Edikted's goodwill, Ross has sold a wide array of products with designs that are nearly identical to Edikted's clothing pieces, exacerbating the consumer confusion caused by Ross' use of the Infringing Marks, as indicated by the #ross and #edikted hashtags included in some of the captions, as shown in the examples provided below:

**COMPLAINT**

| Authentic Edikted Products | Ross Products |
|---|---|
|  |  |

| Authentic Edikted Products | Ross Products |
|---|---|
|  |  |

25

| Authentic Edikted Products | Ross Products |
|---|---|
|  |  |

**COMPLAINT**

| Authentic Edikted Products | Ross Products |
|---|---|
|  | |

27

| Authentic Edikted Products | Ross Products |
| --- | --- |
|  | |

28

| Authentic Edikted Products | Ross Products |
|---|---|
|  | |

**COMPLAINT**

| Authentic Edikted Products | Ross Products |
|---|---|
|  |  |

30

| Authentic Edikted Products | Ross Products |
|---|---|
|  |  |

31

**COMPLAINT**

| Authentic Edikted Products | Ross Products |
| --- | --- |
|  |  |
|  |  |

COMPLAINT

| Authentic Edikted Products | Ross Products |
|---|---|
|  | |

53.     Given Ross' conduct, it is unsurprising that evidence of actual confusion has already appeared in the marketplace, including initial-interest confusion, point-of-sale confusion, and post-sale confusion.  Social media posts—including posts tagging Ross—demonstrate that consumers have been confused about the source, affiliation, sponsorship, or approval of products bearing Ross' Infringing Marks.

54.     One TikTok user was left "speechless" after being initially confused because she "thought [she] found Edikted at Ross"—but was instead holding an infringing RADIKKAL-branded product—and blamed Edikted, stating that "@Edikted [has] some explaining to do."  A screenshot from this post is shown below:

**COMPLAINT**



55.    Another "thought [she] found the edikted jeans" at Ross — but in fact was holding an infringing TELEPATÍA-branded product, leading the user to post a "heartbreak" emoji. A screenshot from this post is shown below:

34

**COMPLAINT**



56.    Because of the pervasiveness of Ross' infringing activities, consumer confusion is appearing even when Ross' Infringing Marks do not appear on its products.  A TikTok user posted a video with the caption "@rossfindss matching set [pink emojis, including pink bow]" using the hashtag "#edikted"—suggesting that she believed she had found authentic Edikted products, based on the product's use of Edikted's distinctive pink bows on the infringing Ross product.  This amplifies the overall marketplace confusion by suggesting to consumers that they can buy authentic Edikted products at Ross.  Screenshots from this post are below:

**COMPLAINT**



57.    In these and many other instances, users tagged Ross' social media handles in their posts about the copied designs and/or used Ross-related hashtags such as #Ross or #Rossfinds, putting Ross on clear notice of the confusion they created.

58.    Despite what Ross' advertising falsely leads consumers to believe, it is not providing "bargains" on Edikted clothing, but rather cheap knockoff versions of authentic Edikted products sold using confusingly similar Infringing Marks.  Consumers are clearly driven by Ross' advertising to seek out Edikted products at Ross stores, as shown in the examples above, only to learn that Ross' promises were false when they encounter knockoffs in place of the bargains on authentic clothing they were told to expect.

**COMPLAINT**

*Defendant's Unlawful Conduct Harms Edikted*

**Defendant's Use of the Infringing Marks Infringes Edikted's Rights in Its Trademarks**

59. By manufacturing and selling products bearing the Infringing Marks, Defendant is attempting to capitalize on the goodwill that Edikted has cultivated through its extensive use and widespread promotion of its Edikted products.

60. Defendant's attempt to appropriate the goodwill Edikted has developed in the EDIKTED Marks is likely to confuse consumers into believing that Defendant's products originate from Edikted or are affiliated with or sponsored by Edikted, when neither is true. Such confusion is likely to occur prior to purchase, at the point of sale, and in the post-sale context.

61. This likelihood of confusion is exacerbated by the fact that products bearing Defendant's Infringing Marks compete directly with Edikted products, as they are both retail companies selling clothing to female consumers and are sold generally through similar channels of trade—physical retail locations in major cities in New York and California and around the country. On information and belief, both parties also target a similar demographic of young, female purchasers.

62. Because Ross' products are relatively inexpensive—compared to other clothing brands and to authentic Edikted products—consumers are likely to exercise a lower level of caution when encountering Defendant's Infringing Marks.

63. Defendant's aggressive pursuit of a partnership with Edikted demonstrates that it was aware of Edikted and the EDIKTED Marks, and Edikted has learned from Ross' own suppliers that Ross directed them to deliberately copy the EDIKTED Marks and place the resulting Infringing Marks on designs identical to authentic Edikted clothing.

**Defendant's False Advertising Harms Edikted**

64. By making the claim that Ross stores contain "a constant stream of high-quality department and specialty store brands at extraordinary savings (aka bargains)," Ross misleads consumers into believing that their shopping experience at Ross will involve discounts on authentic products. In reality, however, consumers shopping for Edikted clothing in Ross stores will only find

37

**COMPLAINT**

knockoffs bearing Infringing Marks, not the "high-quality department and specialty store brands" Ross claims to sell.

65.    Consumers are already being deceived and will likely continue to be deceived into purchasing products bearing the Infringing Marks under this mistaken belief that they are authentic Edikted products.  The statement has caused or is likely to cause injury to Edikted, including lost sales, diverted customers, and harm to goodwill and reputation.

66.    Edikted therefore asks this Court to put a stop to Defendant's unlawful conduct, prevent additional harm, and mitigate the damages that Edikted is likely to suffer as a result of Defendant's actions.

## FIRST CAUSE OF ACTION

### Registered Trademark Infringement Under 15 U.S.C. § 1114

67.    Edikted repeats and realleges each of the allegations above as if fully set forth herein.

68.    Edikted holds valid and subsisting federal registrations in the stylized EDIKTED wordmark design (U.S. Reg. Nos. 6,384,872 and 7,620,611) (the "Registered EDIKTED Marks") and has used these registered trademarks in commerce in connection with Edikted's goods and services.

69.    Defendant has sold goods in interstate commerce bearing colorable imitations of the Registered EDIKTED Marks, namely the Infringing Marks.

70.    Defendant's use of the Infringing Marks, which are colorable imitations of the Registered EDIKTED Marks, is likely to cause confusion or mistake, or to deceive consumers as to the origin of Defendant's products.

71.    Defendant knowingly adopted the Infringing Marks with the intent to cause confusion or mistake, or to deceive consumers as to the origin of Defendant's products and is therefore likely to cause confusion, or to cause mistake.

72.    Consumers are likely to believe, incorrectly, that Defendant's products bearing the Infringing Marks originate from, are affiliated with, or have been authorized, sponsored, approved, or endorsed by Edikted.

38

**COMPLAINT**

73.    Defendant's wrongful acts will continue unless and until they are enjoined, as authorized by 15 U.S.C. § 1116.

74.    Defendant's acts have caused, and will continue to cause, irreparable injury to the sales and reputation of Edikted as well as the goodwill developed by Edikted.  Because Defendant's conduct is ongoing and the resulting harm cannot be fully remedied by monetary damages alone, Edikted has no adequate remedy at law.

75.    Defendant's acts have unjustly enriched Defendant and have allowed Defendant to enjoy ill-gotten profits.

76.    The foregoing acts by Defendant constitute infringement of Edikted's federally registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

77.    By reason of the foregoing, Edikted is entitled to injunctive relief against Defendant, restraining Defendant from further acts of infringement of the Registered EDIKTED Marks, and money damages in an amount to be determined at trial.  Defendant's acts make this an exceptional case under 15 U.S.C. §1117(a), and Edikted is thus entitled to an award of its attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### False Association and Unfair Competition Under 15 U.S.C. § 1125(a)(1)(A)

78.    Edikted repeats and realleges each of the allegations above as if fully set forth herein.

79.    Edikted owns the EDIKTED Marks, which are strong, distinctive, valid, and enforceable trademarks both under federal and common law.

80.    The EDIKTED Marks are distinct and significant and have been used in commerce prior to any relevant use by Defendant, such that the use of the name "EDIKTED" and the stylized pink-and-blue design of the EDIKTED wordmark identifies Edikted.  Edikted has an established brand which is capable of protection.

81.    By making unauthorized use, in interstate commerce, of the Infringing Marks, Defendant is likely to cause confusion, mistake or deception as to the affiliation or connection of Defendant with Edikted and/or as to the sponsorship or approval of Defendant's goods by Edikted, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**COMPLAINT**

82. Defendant's acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to describe and/or represent, in a false or misleading fashion, Defendant's products as authentic Edikted products by use of confusingly similar versions of the registered and unregistered EDIKTED Marks, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

83. Defendant's wrongful acts will continue unless and until they are enjoined, as authorized by 15 U.S.C. § 1116.

84. Defendant's acts have caused, and will continue to cause, irreparable injury to Edikted unless and until they are enjoined.

85. Defendant's acts have unjustly enriched Defendant and have allowed Defendant to enjoy ill-gotten profits.

86. By reason of the foregoing, Edikted is entitled to injunctive relief against Defendant, restraining Defendant from further acts of infringement of the EDIKTED Marks, and money damages in an amount to be determined at trial. Defendant's acts make this an exceptional case under 15 U.S.C. §1117(a), and Edikted is thus entitled to an award of its attorneys' fees and costs.

### THIRD CAUSE OF ACTION

### False Advertising Under 15 U.S.C. § 1125(a)(1)(B)

87. Edikted repeats and realleges each of the allegations above as if fully set forth herein.

88. Defendant's marketing and advertising that it sells "a constant stream of high-quality department and specialty store brands at extraordinary savings (aka bargains)" constitutes false and misleading representations under the Lanham Act.

89. Defendant's false and misleading claims have a tendency to confuse, mislead, and deceive a substantial segment of its audience as to whether Defendant offers authentic high-quality products, including whether Defendant sells authentic Edikted products.

90. Defendant's false and misleading statements are material because they have or are likely to influence consumer purchasing decisions, as consumers have or are likely to purchase

**COMPLAINT**

Defendant's products with the mistaken belief (created by Defendant's false statements) that they are authentic Edikted products, when in fact they are not.

91.    Defendant placed its false and misleading statements and claims in interstate commerce by disseminating them nationwide through multiple brick-and-mortar stores and via the Internet.

92.    As a direct and proximate cause of these false and misleading statements, Edikted has been and will continue to be damaged through lost and diverted sales.

93.    Based on the foregoing, Defendant has engaged in false and deceptive representations that are likely to cause confusion or deceive consumers in violation of 15 U.S.C. §1125(a)(1)(B).

94.    On information and belief, Defendant has engaged in this activity knowingly, willfully, and in bad faith—in order to benefit from the success garnered by Edikted's substantial investment in its brand—justifying the assessment of enhanced damages against them.

95.    Defendant's wrongful acts will continue unless and until they are enjoined.

96.    Defendant has been unjustly enriched by Defendant's false and misleading statements and has allowed Defendant to enjoy ill-gotten profits from the sale and distribution of products bearing the Infringing Marks.

97.    Defendant has been unjustly enriched, and Edikted has been damaged, in an amount to be determined at trial.  Defendant's acts make this an exceptional case under 15 U.S.C. §1117(a), and Edikted is thus entitled to an award of its attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### Unfair Competition Under Cal Bus. & Prof. Code § 17200 *et seq.*

98.    Edikted repeats and realleges each of the allegations above as if fully set forth herein.

99.    California's Unfair Competition Law ("UCL"), Business & Professions Code § 17200, *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice, and unfair, deceptive, untrue or misleading advertising.

100.    Edikted owns all right, title, and interest in and to the EDIKTED Marks, including all common-law rights in such trademarks.

41

**COMPLAINT**

101.    Defendant's unauthorized use of the EDIKTED Marks constitutes unlawful, unfair, and/or fraudulent business acts or practices under the UCL, including because such conduct violates the Lanham Act.  Defendant's conduct is likely to materially mislead and deceive consumers, in that it is likely to cause members of the public to believe, incorrectly, that products bearing Defendant's Infringing Marks originate from, or have been authorized, sponsored, approved, or endorsed by Edikted, or that products bearing Defendant's Infringing Marks are otherwise connected to, sponsored by, or affiliated with Edikted in some way; whereas, in fact, Edikted does not approve of Defendant's appropriation of its trademarks and has not authorized Defendant to sell products bearing the Infringing Marks.

102.    Defendant's actions were directed at consumers.

103.    Defendant's acts have caused, and will continue to cause, irreparable injury to Edikted unless and until they are enjoined.

104.    Defendant's acts have unjustly enriched Defendant and have allowed Defendant to enjoy ill-gotten profits.

105.    Edikted is entitled to injunctive relief, restitution, disgorgement of profits to the extent permitted by law, and such other equitable relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION**

**Common Law Trademark Infringement**

106.    Edikted repeats and realleges each of the allegations above as if fully set forth herein.

107.    Edikted owns all right, title, and interest in and to the distinctive bow designs, including all common-law rights in those designs as trademarks.

108.    Edikted's bow logo design serves as an indicator of source, in that consumers who see the bow logo understand that the product bearing the logo is an Edikted product or is sold with the approval of Edikted.

109.    The products sold by Defendant bear imitations of Edikted's common-law trademarks. Such unauthorized use by Defendant constitutes trademark infringement, and is likely to cause

42

confusion, mistake or deception as to the affiliation or connection of Defendant with Edikted and/or as to the sponsorship or approval of Defendant's goods by Edikted.

110. Upon information and belief, Defendant committed the above alleged acts willfully, in bad faith, and in conscious disregard of Edikted's rights, and Edikted is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of California.

111. Defendant's wrongful acts will continue unless and until they are enjoined.

112. Defendant's acts have caused, and will continue to cause, irreparable injury to Edikted unless and until they are enjoined.

113. Defendant's acts have unjustly enriched Defendant, and have allowed Defendant to enjoy ill-gotten profits.

114. Edikted has been damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Edikted respectfully requests that this Court enter judgment in its favor against Ross Stores, Inc. and enter an order granting the following relief:

A. A judgment that Defendant has infringed the EDIKTED Marks in violation of 15 U.S.C. § 1114;

B. A judgment that Defendant has infringed the EDIKTED Marks in violation of 15 U.S.C. § 1125(a);

C. A judgment that Defendant has falsely advertised its products in violation of 15 U.S.C. § 1125(a);

D. A judgment that Defendant has committed unfair trade practices in violation of California's Unfair Competition Law, Business & Professions Code § 17200, *et seq*;

E. A judgment that Defendant has infringed Edikted's common-law rights in its trademark bow logo design;

F. An injunction enjoining and restraining Defendant and all those acting in concert or participation with Defendant from manufacturing, importing, distributing, offering for sale, or selling

43

**COMPLAINT**

any products bearing the Infringing Marks and any other marks confusingly similar to Edikted's trademarks;

G.    An order directing Defendant to deliver to Edikted for destruction all products bearing the Infringing Marks or any other marks confusingly similar to Edikted's trademarks in its possession or under its control, pursuant to 15 U.S.C. § 1118;

H.    An accounting and award of Defendant's profits resulting from its infringing activities;

I.    An accounting and award of Defendant's profits resulting from its false advertising;

J.    An award of Edikted's actual money damages, trebled;

K.    An award of such other and further punitive damages to the fullest extent permitted by law;

L.    An award of Edikted's costs of litigation and attorneys' fees to the full extent permitted by 15 U.S.C. § 1117 and 35 U.S.C. § 285; and

M.    Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

Dated: July 15, 2026                    Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: */s/ Christopher S. Ford*_____
Christopher S. Ford (CA Bar No. 337795)
Megan K. Bannigan (*pro hac vice* forthcoming)
Naomi Perla (*pro hac vice* forthcoming)
66 Hudson Boulevard
New York, New York 10001
Telephone:  (212) 909-6000
Facsimile:  (212) 909-6836
Email:  csford@debevoise.com
Email:  mkbannigan@debevoise.com
Email:  nperla@debevoise.com

*Attorneys for Plaintiffs Edikted, LLC and Edikted Global Ltd*

44

**COMPLAINT**