UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDIKTED, LLC and EDIKTED GLOBAL LTD,

Plaintiffs,

v.

ROSS STORES, INC.,

Defendants.

Case No. 5:26-cv-07277-EKL

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 23

This fashion feud between Plaintiffs Edikted, LLC and Edikted Global Ltd ("Edikted") and Defendant Ross Stores, Inc. ("Ross") arises from Ross's alleged trademark infringement and marketing of "copycat designs" to trick consumers into believing that Ross carries authentic Edikted-brand clothing. *See* Compl., ECF No. 1 ("Compl."). Although Edikted asserts five causes of action, Ross moves to dismiss only the third cause of action for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). *See* Mot. to Dismiss, ECF No. 23 ("Mot."). Having carefully reviewing the parties' briefs and relevant authority, the Court finds this matter suitable for disposition without oral argument. *See* Civil L.R. 7-1(b). For the following reasons, the Court DENIES Ross's motion to dismiss.

## I. BACKGROUND[1]

Edikted is a "hugely popular, innovative, and rapidly growing [Los Angeles]-based fashion company." Compl. ¶ 1. Edikted was founded in 2020 as an online-only clothing retailer but has since expanded to operate brick-and-mortar locations across the United States. *Id.* ¶ 27. Edikted has cultivated "a distinctive and recognizable brand identity" tailored to Gen Z female

[1] All facts are taken from the complaint and accepted as true for purposes of this motion.

United States District Court
Northern District of California

United States District Court
Northern District of California

consumers. *Id.* ¶¶ 26, 28-29, 40, 61. Its retail presence and marketing strategy has garnered attention from many national media platforms and "a following among celebrities." *Id.* ¶¶ 4, 6-7. Edikted owns federal and common-law rights in multiple trademarks covering its wordmark, logo, and design elements. *Id.* ¶ 37. The EDIKTED word mark and its variations are protected by various U.S. Trademark Registrations, and Edikted has also applied for registrations covering its distinctive bow logo designs. *Id.* ¶¶ 37-39.

Ross is a "discount retailer" that operates brick-and-mortar stores. *Id.* ¶¶ 9, 42. In early 2024, Ross began "aggressively soliciting Edikted's business" by "emailing Edikted multiple times requesting to collaborate" and "making unsolicited and unannounced visits to Edikted's offices and warehouses." *Id.* ¶ 46. Edikted declined to partner with Ross. *Id.* Ross then "directed its factory partners to create confusingly similar infringing versions of the EDIKTED Marks – including RADIKKAL, TELEPATÍA, and BLUE RIOT – and apply those Infringing Marks to imitations of dozens of highly recognizable Edikted clothing designs, including the distinct bow design." *Id.* ¶ 47. Images of Plaintiffs' "Edikted" tag and Ross's "Radikkal" brand tags are shown below. *See id.* ¶¶ 10, 48. According to the complaint, these tactics have confused Ross shoppers into believing that Ross carries authentic Edikted clothing products. *See id.* ¶¶ 53-57.

| Authentic Edikted Hangtag | Ross' Infringing "Radikkal" Hangtag |
| --- | --- |
|  |  |

Ross advertises on its website that it sells "a constant stream of high-quality department and specialty store brands at extraordinary savings (aka bargains)." *Id.* ¶¶ 42, 88. Edikted claims that this advertising is false or misleading in violation of the Lanham Act. Edikted alleges that the statement is false because Ross does not sell "specialty store brands" at "savings," but rather sells

"infringing knockoff versions of authentic Edikted products," and those products do not offer "any savings at all" because "they are not authentic Edikted products being sold at a discount." *Id.* ¶ 43. Edikted alleges that the statement has "a tendency to confuse, mislead, and deceive a substantial segment of its audience as to whether [Ross] offers authentic high-quality products, including whether [Ross] sells authentic Edikted products." *Id.* ¶ 89. Edikted further alleges that the statements are material because they "have or are likely to influence consumer purchasing decisions, as consumers have or are likely to purchase [Ross's] products with the mistaken belief . . . that they are authentic Edikted products, when in fact they are not." *Id.* ¶ 90. The statements are also material because they may mislead consumers "into believing that their shopping experience at Ross will involve discounts on authentic products." *Id.* ¶ 64.

Edikted filed this lawsuit on July 15, 2026, asserting five causes of action: (1) registered trademark infringement under 15 U.S.C. § 1114; (2) false association and unfair competition under 15 U.S.C. § 1125(a)(1)(A); (3) false advertising under 15 U.S.C. § 1125(a)(1)(B); (4) unfair competition under Cal Bus. & Prof. Code § 17200 *et seq*.; and (5) common law trademark infringement. *Id.* ¶¶ 67-114. Ross moves to dismiss the false advertising claim.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

## III. DISCUSSION

Ross moves to dismiss Edikted's false advertising claim under Section 43(a)(1)(B) of the Lanham Act. Section 43(a)(1)(B) provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To state a claim under Section 43(a)(1)(B), a plaintiff must plausibly allege: (1) "a false statement of fact by the defendant in a commercial advertisement about its own or another's product"; (2) "the statement actually deceived or has the tendency to deceive a substantial segment of its audience"; (3) "the deception is material, in that it is likely to influence the purchasing decision"; (4) "the defendant caused its false statement to enter interstate commerce"; and (5) "the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its product." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *see also Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008).

Ross advances three arguments for dismissal. The Court addresses each issue in turn.

### A. Nonactionable Puffery

First, Ross argues that the challenged statement – that it sells "a constant stream of high-quality department and specialty store brands at extraordinary savings (aka bargains)" – constitutes nonactionable puffery. Mot. at 5. A statement is puffery "if the claim is extremely unlikely to induce consumer reliance." *Newcal Indus.*, 513 F.3d at 1053. The distinction between nonactionable puffery and an actionable statement of fact "rests in the specificity or generality of the claim." *Id.* A general, subjective claim about a product is more likely to be puffery, while a quantifiable claim about the product's "specific or absolute characteristics" is a statement of fact that could be actionable if false. *Id.* A statement that is not "specific and measurable" tends to be "incapable of being proved false," and thus cannot serve as the basis for a false advertising claim.

*Mitchell v. NY & Co. Ecomm LLC*, No. 23-cv-10117, 2024 WL 1328333, at *6 (C.D. Cal. Mar. 26, 2024) (citation modified) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)). Moreover, a general and subjective claim is unlikely to induce consumer reliance, thus it cannot plausibly deceive a substantial segment of consumers or materially influence their purchasing decision. Whether a statement is an actionable statement of fact or nonactionable puffery is a question of law that may be resolved at the pleading stage. *Newcal Indus.*, 513 F.3d at 1053.

Ross argues that "a constant stream of high-quality department and specialty store brands at extraordinary savings (aka bargains)" is a "general statement about availability, quality, and value" that "contains nothing quantifiable or measurable." Mot. at 5. The Court agrees that promising a "constant stream" of "high-quality" products at "extraordinary savings" is nonactionable puffery because the statements are subjective, and they are not quantifiable or measurable. *See Newcal Indus.*, 513 F.3d at 1052-53 (concluding that a company's offer of "flexibility" was puffery, whereas a specific representation of "95% up-time service" was actionable); *Southland Sod Farms*, 108 F.3d at 1145 (distinguishing nonactionable puffery statement "Less is More" from the specific, actionable statement "50% Less Mowing" because the latter makes a measurable claim of product superiority); *Muldoon v. DePuy Orthopaedics, Inc.*, No. 15-cv-02723-PJH, 2024 WL 3522204, at *11 (N.D. Cal. July 23, 2024) (holding that promises of "high quality" were mere "puffery"). Likewise, Ross's advertising that it offers the "best bargains" and "designer deals," Compl. ¶¶ 44-45, is nonactionable puffery because the statements are generalized and subjective. *See Nocchiero v. Canyon Bicycles USA, Inc.*, No. 25-cv-04066-HSG, 2026 WL 1102867, at *6 (N.D. Cal. Apr. 23, 2026) (identifying statements such as "Best in Class" and "the world's best bikes" as nonactionable puffery).

Edikted's primary contention, however, focuses on Ross's specific representation that its products are "department and specialty store brands" sold at a discount. Compl. ¶ 64. Edikted argues that whether the products are "department and specialty store brands" and whether they are sold at a discount are measurable statements that can be proven false by "a binary determination." Opp. at 7; *see Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 672-73 (9th

United States District Court
Northern District of California

Cir. 2023) (generalized statements characterizing the plaintiff's products as "malicious" are actionable because the "products either contain malicious files and threaten the security of users' computers, or they do not"). As in *Enigma Software Group*, Edikted alleges a binary factual proposition: Ross either sells "department and specialty store brands," or it does not – and if it does not, it cannot claim to offer any savings on those products. That proposition is capable of proof even if the statement does not identify Edikted's products by name. Nor does Edikted's theory require reading the statement as representing that Ross sells "only" department and specialty store brands. Reply at 1, ECF No. 30. Whether Ross in fact sells department and specialty store brand products may ultimately bear on falsity, tendency to deceive, or materiality. For puffery purposes, the statement contains a specific, testable factual representation.

When analyzed in its "full context," Ross's statement plausibly conveys that Ross sells department and specialty store brands at savings – *i.e.*, at a lower price than those same brands are sold elsewhere. *See Southland Sod Farms*, 108 F.3d at 1139 (explaining that an advertising claim "must always be analyzed in its full context"). This conclusion does not require "examining the eyes, nose, and mouth separately and in isolation from each other," as Ross suggests. Reply at 4 (quoting *Southland Sod Farms*, 108 F.3d at 1139). Accordingly, Ross's advertising, insofar as it represents that Ross stores sell "department and specialty store brands" at "savings," is sufficiently specific and testable to avoid dismissal as nonactionable puffery.

**B. Tendency to Deceive and Materiality**

Second, Ross argues the challenged statement is so general that it could not plausibly deceive consumers or be material to their purchasing decisions. Mot. at 6-7 (citing *Newcal Indus.*, 513 F.3d at 1052). Tendency to deceive and materiality are two elements of a Lanham Act false advertising claim. *Southland Sod Farms*, 108 F.3d at 1139.

For tendency to deceive, Ross argues that the complaint does not allege facts to support that the challenged statement actually deceived, or tends to deceive, a substantial segment of its audience. Mot. at 6-7. However, Edikted alleges that the statement conveys two specific messages: that Ross offers "department and specialty store brands," and that Ross offers that merchandise at a discount. Compl. ¶¶ 42-43, 64. Edikted also identifies social media posts

United States District Court
Northern District of California

reflecting that consumers have been confused about whether Ross's products were authentic Edikted products. Compl. ¶¶ 54-57. The alleged false advertising and the alleged consumer confusion concern the same factual propositions: whether Ross was offering Edikted merchandise, and at savings. Given Edikted's allegations of actual consumer confusion, it is plausible that the challenged advertisement tends to deceive the relevant audience. Whether any consumers were *in fact* deceived or influenced by the statement on Ross's website is a factual question not suitable for resolution at this stage. *Cf. Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (explaining that likelihood of deception is generally a question of fact).

For materiality, Ross argues that a statement "identifying no specific item, price or competitor cannot plausibly be read to create a false impression about any one company's specific goods." Mot. at 7. In other words, Ross argues that its references to specialty store and department store brands is too generalized to influence consumers into believing that it carries Edikted brand cloths in particular. As support, Ross relies on a case involving a disparagement theory based on a generalized market category. *See North American Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 216 (E.D.N.Y. 2020) (holding that an attack on unnamed "supermarket olive oil" did not necessarily target the plaintiff because the complaint alleged no facts plausibly tying the general statement to the specific plaintiff). The analogy is unpersuasive. Here, Edikted plausibly alleges that the reference to "specialty store" brands targets Edikted. *See* Compl. ¶¶ 42, 88. Moreover, the alleged representations concern authenticity and price, both of which plausibly bear on consumer purchasing decisions even though the statement does not identify a specific item, price, or brand name. *See POM Wonderful LLC v. Purely Juice, Inc.*, No. 07-cv-02633, 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008) (finding product-nature representation material); *Casablanca Design Ctr., Inc. v. Closets by Design, Inc.*, No. 23-cv-02155, 2024 WL 5689075, at *3 (C.D. Cal. Jan. 29, 2024) (finding discount representations plausibly material); *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (holding that "price advertisements matter").

Edikted has therefore sufficiently alleged that the challenged statement tends to deceive consumers and that the deception is material at this stage.

### C. Overlap with Trademark and False Association Claims

Finally, Ross argues that Edikted improperly recasts separate trademark and false association claims as a false advertising claim. Mot. at 7. The Lanham Act's false advertising and false association provisions are two distinct statutory bases of liability, each reaching a different kind of misrepresentation. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). False advertising requires a misrepresentation of the "nature, characteristics, qualities, or geographic origin" of "goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). False association, by contrast, addresses confusion as to "affiliation, connection, or association" or "origin, sponsorship, or approval." 15 U.S.C. § 1125(a)(1)(A).

Ross argues that Edikted's false advertising allegations "focus entirely on confusion about source" of the products and therefore fall under false association and trademark law, not false advertising. Mot. at 8. Although the phrase "department and specialty store brands" may implicate authenticity of branded goods, the challenged statement also makes a separate claim that Ross offers that merchandise at savings. *See* Compl. ¶¶ 42, 88. Thus, the allegedly false statement is not necessarily duplicative of the separate trademark and false association claims. This can be distinguished from *EVIG, LLC v. Natures Nutra Co.*, 685 F. Supp. 3d 991 (D. Nev. 2023), which Ross cites for the proposition that a false advertising claim cannot be premised on the same facts that support a false association claim. Mot. at 7. In *EVIG*, the court found a false advertising claim "baffling" and "more akin to a false association claim" because the theory was "not that defendant has misrepresented the qualities of a product in some fundamental way," but rather that the defendant's "product looks too similar to plaintiff's." *EVIG*, 685 F. Supp. 3d at 996. Indeed, the plaintiff failed to identify any false or misleading statement. *Id.* at 997. Here, by contrast, Edikted has pleaded both false association and false advertising claims, and the false advertising claim rests on allegations about Ross's retail offerings and pricing, not solely on the source-confusion allegations supporting the false association claim.

More fundamentally, the case law that Ross cites to support dismissal addresses a different concern that is not clearly implicated here. *See* Mot. at 7-9. Courts have declined to expand false advertising liability under the Lanham Act when doing so would circumvent limits imposed by

another intellectual property regime. For example, the Ninth Circuit rejected a false advertising claim premised on the defendant's failure to obtain a copyright license because doing so would effectively allow non-copyright holders to bring copyright infringement claims. *See Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008). Likewise, the Ninth Circuit rejected a false advertising claim based on statements that the defendant made the "first" biodegradable cooler because "Congress protected the economic interest of being a first mover through patent law – not the Lanham Act," and the plaintiff's patent application had been largely rejected. *Vericool World, LLC v. Igloo Prods. Corp.*, 175 F.4th 1045, 1054-59 (9th Cir. 2026). The problem addressed by these cases is not the mere overlap between false advertising claims and claims brought under intellectual property regimes, but rather the use of false advertising liability to *circumvent* those regimes by expanding liability.

Here, Edikted's false advertising claim is not merely a claim about source, affiliation, sponsorship, or approval – the interests protected by trademark law. Thus, Edikted may pursue its false advertising claim independent of its trademark and false association claims. If discovery reveals that the false advertising claim is entirely duplicative of Edikted's trademark infringement and false association claims, it can be dismissed at a later stage. But the potential for overlap does not improperly expand liability under or circumvent another intellectual property regime. To the contrary, the trademark infringement and false association claims will proceed regardless of the false advertising claim because Ross did not seek to dismiss them.

## IV. CONCLUSION

In sum, none of the bases for dismissal of Edikted's false advertising claim are availing. At this stage, Edikted has plausibly alleged a false advertising claim independent of its false association and trademark claims against Ross. Accordingly, the motion to dismiss is DENIED. Each Defendant shall file a responsive pleading within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: November 20, 2026

Eumi K. Lee
United States District Judge